UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ SELENIA VASQUEZ, | ) Case No. ED CV 06-588-PJW |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND ORDER |
| v. | ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) |
| Defendant. | ) |

I.

INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for supplemental security income ("SSI").[1]  Because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

---

[1] Plaintiff was originally found to be disabled in 1993. (Administrative Record ("AR") 153-55.)  In 1999, the Agency determined that her health had improved and she was able to work.  (AR 170-72.)  Her appeal of that decision was denied and Plaintiff did not challenge that denial.  Instead, she filed a new SSI benefits application on November 16, 2000, alleging disability as of June 23, 1993.  (AR 319-22.)

II.

SUMMARY OF FACTS AND PROCEEDINGS

After Plaintiff's application was denied initially by an administrative law judge ("ALJ") on April 24, 2003, and after the Appeals Council denied review, Plaintiff filed an action in this Court, challenging the Agency's decision.  On August 1, 2005, this Court issued an order remanding the case to the Agency to reassess Plaintiff's credibility, to reconsider her residual functional capacity, and to then redetermine whether she was disabled.  (AR 685-86.)  More specifically, the Agency was directed to clarify the impact of Plaintiff's use of a nebulizer on her ability to perform work.  (AR 685.)

On January 11, 2006, a different ALJ conducted another administrative hearing.  (AR 726-57.)  On April 6, 2006, the ALJ denied Plaintiff's SSI application in a written decision.  (AR 555-60.)  Plaintiff then filed the instant action in this court, raising the following three claims of error:

    1.    The ALJ did not properly consider the medical evidence regarding Plaintiff's use of a nebulizer.

    2.    The ALJ erred when he found that Plaintiff was not credible.

    3.    The ALJ erred in relying on the vocational expert testimony.

(Joint Stipulation ("Joint Stip.") at 4, 9, 14.)

III.

DISCUSSION

A.    <u>The Medical Expert's Testimony</u>

In her first claim of error, Plaintiff contends that the ALJ erred when he relied on the testimony of the medical expert, Dr. Minh, that Plaintiff did not require frequent use of a nebulizer for

2

1  treating her asthma because this testimony was "confusing, convoluted,
2  and in certain instances extremely vague and ambiguous." (Joint Stip.
3  at 6.)  For the following reasons, these claims are rejected.
4       Plaintiff contends that the ALJ should not have relied on Dr.
5  Minh's testimony that Plaintiff did not need to use a nebulizer that
6  often because Dr. Minh also testified that Plaintiff did need to use a
7  nebulizer numerous times during the day and that that use would
8  interfere with Plaintiff working. (Joint Stip. at 6.)  The record
9  does not support this claim.  The relevant transcript passages read as
10 follows:
11         ALJ: Doctor could you give me some testimony concerning
12              a person using the nebulizer machine as
13              [Plaintiff] claims that she's been using, what
14              effects does it have on a person's body, does it
15              incapacitate them to make them functionally not
16              able to work for any periods of time?
17         ME:  I think that would be time consuming, it's
18              more than twice a day.
19         ALJ: So if more than twice a day you wouldn't think the
20              person would be able to work?
21         ME:  Yes Your Honor because (INAUDIBLE) with the
22              other medication and particularly along with
23              the other medication (INAUDIBLE) she would be
24              able to work.
25         ALJ: Okay.  So in this specific case with the use of
26              the inhalers that she does carry, well before I
27              get to the inhalers let's stick with the
28              nebulizer, do you find adequate objective medical

|   |   |   |
|---|---|---|
| 1 |  | documents that supports in this case that |
| 2 |  | [Plaintiff] would have had to have used that |
| 3 |  | nebulizer two to four times a day constantly for |
| 4 |  | any period of time? |
| 5 | ME: | Yeah Your Honor because I don't think they have |
| 6 |  | exhausted all the treatment intervention.  For |
| 7 |  | example, there's many places in the record that |
| 8 |  | she did not take the medication as prescribed. |
| 9 | (AR 738.) | |
| 10 | ALJ: | But once, once that we've ceased the smoking, |
| 11 |  | assuming there's no smoking going on, do you see |
| 12 |  | any objective evidence in this file to indicate |
| 13 |  | though again the use of a nebulizer is required as |
| 14 |  | often as she's portraying to us today that she was |
| 15 |  | using it? |
| 16 | ME: | You mean the nebulizer? |
| 17 | ALJ: | Yes, the machine. |
| 18 | ME: | I, I look at the laboratory signs, the |
| 19 |  | (INAUDIBLE), and they usually go very high, and |
| 20 |  | (INAUDIBLE) rate, I don't think that's very high, |
| 21 |  | and I don't have a (INAUDIBLE) but even the times |
| 22 |  | she came to see the doctor, let me see, her |
| 23 |  | (INAUDIBLE) rate was 18 per minute, 20 a minute, |
| 24 |  | so more (INAUDIBLE), with a little bit of |
| 25 |  | expectations, like you know (INAUDIBLE), and that |
| 26 |  | level of respiratory frequency just a little bit |
| 27 |  | higher than normal people, along with (INAUDIBLE) |

```
 1                      it's very difficult for me to realize the
 2                      nebulizer would be used three or four times a day
 3                      for (INAUDIBLE).
 4             ALJ:    So you're saying there is or is not objective
 5                      evidence to support the use, the nebulizer use
 6                      that often?
 7             ME:     The objective evidence showing that this patient
 8                      has a (INAUDIBLE) that much of an inhaler, or
 9                      bronchodilator, (INAUDIBLE), by inhaler,
10                      (INAUDIBLE), not breathing 18 or 20 times a
11                      minute, then with a history of necessity to take
12                      that much nebulizer or inhaler[.]
```
13 (AR 743-744.)

14     The ALJ interpreted the medical expert's testimony to mean that
15 Plaintiff did not need to use the nebulizer two to four times a day.
16 Though Dr. Minh appeared to initially agree with the premise of the
17 ALJ's hypothetical that Plaintiff needed to use a nebulizer two to
18 four times a day, it is apparent from reading Dr. Minh's testimony as
19 a whole that he did not find medical support for Plaintiff's claim
20 that she was required to use the nebulizer that often.  The ALJ was
21 entitled to rely on that testimony to find that Plaintiff did not need
22 to use the nebulizer as often as she alleged.  *See Andrews v. Shalala*,
23 53 F.3d 1035, 1041 (9th Cir. 1995) (holding a reviewing physician's
24 opinion may serve as substantial evidence when "'not contradicted by
25 *all other evidence* in the record'" (quoting *Magallanes v. Bowen*, 881
26 F.2d 747, 752 (9th Cir. 1989)(emphasis in original)).

27     Plaintiff contends that Dr. Minh's testimony should not be
28 considered at all by the Court because the transcript of his testimony

contains 33 gaps in which testimony was not transcribed because it was inaudible and the testimony as a whole was confusing. (Joint Stip. at 7.) Plaintiff does not offer any authority for this proposition nor does she specify exactly which parts of Dr. Minh's testimony were confusing.

In *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 583 (9th Cir.), *modified on reh'g on other grounds*, 859 F.2d 1396 (9th Cir. 1988), the Ninth Circuit Court of Appeals rejected a similar claim that a record was not adequate for review where a portion of the tape could not be transcribed at all and where 26 passages in the transcript where identified as "inaudible." In reaching its decision, the Ninth Circuit noted a decision from the Fourth Circuit, *McGlone v. Heckler*, 791 F.2d 1119, 1120 (4th Cir. 1986), in which that court held:

> Whether the transcript is inadequate depends upon the materiality of the omissions. The plaintiff shoulders the burden of showing that some material evidence was not reported or was so incompletely reported that its effect is obscured.

The Ninth Circuit also noted that in *Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986), the Eighth Circuit held that the issue of whether the record is inadequate turns on whether the gaps in the transcript "interfere with comprehension of the testimony to an extent that would hinder fair review." *See also Williams v. Barnhart*, 289 F.3d 556, 557-58 (8th Cir. 2002) ("Absent an indication that the missing portion of the transcript would bolster appellant's arguments or prevent judicial review, this Court will not remand a case based upon inaudible portions of the record.")

Plaintiff has not identified any material evidence that was not reported, or incompletely reported, in the transcript. Indeed, she has not identified any particular passage at all that might be deemed confusing, convoluted, vague, or ambiguous. Thus, she clearly has not met her burden.

Furthermore, the Court finds that the transcript is not so incomplete as to hinder fair review. Though Dr. Minh's testimony is not always crystal clear when viewed in isolation, his testimony is sufficiently comprehensible taken as a whole.[2] It is also significant

---

[2] Two passages of testimony in particular are replete with "inaudible" notations. In the first, Dr. Minh is discussing his treatment of patients who claim to require daily use of a nebulizer in varying amounts, stating that he would check before he "increase[d] the amount of (INAUDIBLE), because some people can go into complications, arrhythmias, with overuse of (INAUDIBLE), so basically in this case it's that (INAUDIBLE) I would check into whether she takes medication properly, (INAUDIBLE) the Prednisone and if she really is smoking." (AR 743.) The gist of this testimony, that Dr. Minh would look into whether a patient was compliant with medication and not smoking before recommending increased nebulizer usage, is clear. In the second noticeably incomplete passage, Dr. Minh is discussing the lack of objective evidence to support Plaintiff's claimed need for the nebulizer:

> I, I look at the laboratory signs, the (INAUDIBLE), and they usually to go very high, and (INAUDIBLE) rate, I don't think that's very high, and I don't have a (INAUDIBLE) but even the times she came to see the doctor, let me see, her (INAUDIBLE) rate was 18 per minute, 20 per minute, so more (INAUDIBLE), with a little bit of expectations, like you know (INAUDIBLE), and that level of respiratory frequency just a little bit higher than normal people, along with (INAUDIBLE) it's very difficult for me to realize the nebulizer would be used three or four times a day for (INAUDIBLE).

(AR 744.) Although this passage is somewhat difficult to decipher, it is nevertheless clear that Dr. Minh does not believe that Plaintiff's recorded respiratory rate supports her alleged need to use the nebulizer. Moreover, the testimony is followed by clarifying

7

1  that at no point did Plaintiff's counsel request clarification of Dr.
2  Minh's testimony at the hearing or indicate that the testimony was
3  confusing.  It appears that Plaintiff's counsel and the ALJ were able
4  to adequately follow the testimony.  This Court, too, is able to
5  discern the gist of Dr. Minh's testimony, despite the gaps and
6  apparent contradictions.  The Court finds that, while distracting, the
7  gaps do "'not interfere with comprehension of the testimony to an
8  extent that would hinder fair review.'"  *Varney*, 846 F.2d at 583
9  (quoting *Ward*, 786 F.2d at 848).  Thus, Plaintiff's claim does not
10 warrant remand.

B.   The Credibility Finding

The ALJ found that Plaintiff was not credible.  In her second claim for relief, Plaintiff argues that this finding was infirm because the ALJ did not "specify which allegations of pain and/or other symptoms he found not credible," and did not properly assess her credibility under Social Security Ruling 96-7p.  (Joint Stip. at 11.) Plaintiff also alleges that the ALJ's finding that she was evasive in her testimony is not supported by the record.  To the extent that Plaintiff's testimony might have been confusing, Plaintiff contends that such confusion was caused by the ALJ's demeanor at the hearing. (Joint Stip. at 9-10.)  As set forth below, the Court finds that the ALJ's credibility finding is supported by the record.

Credibility determinations are the province of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  An ALJ is not required to

---

questions from both the ALJ and Plaintiff's counsel.  (AR 744.)  Thus, there is no basis for concluding that the incomplete transcript with respect to this portion of testimony prejudiced Plaintiff at the hearing or impedes judicial review.

believe every allegation of disabling pain or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603). Nevertheless, to discredit a claimant's testimony when a medical impairment has been established and where there is no evidence that the claimant was a malingerer, the ALJ must provide specific, clear, and convincing reasons for doing so. *Id*. If the ALJ's credibility finding is supported by substantial evidence in the record, a reviewing court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ offered three reasons to support his finding that Plaintiff's statements concerning the "intensity, duration and limiting effects of [her alleged] symptoms are not entirely credible." (AR 559.) First, he observed that "the objective medical findings simply do not support [Plaintiff]'s need for such frequent use of her nebulizer and inhaler." (AR 559.) Second, he found that Plaintiff's testimony was undermined by the "apparent discrepancy between the reports of noncompliance and [Plaintiff]'s insistence that she consistently took her medication as prescribed." (AR 559.) And third, he found that Plaintiff was being evasive during questioning at the administrative hearing. (AR 559.)

Dr. Minh, the testifying medical expert, stated that the medical records did not support Plaintiff's need to use a nebulizer twice or more a day. (AR 744.) He pointed out that Plaintiff had a decreasing number of asthma attacks necessitating hospitalization between 2001 and 2005, with three in October and December 2001, two in 2003, none in 2004, and only one in 2005. (AR 740-41; *see also* AR 558.) Dr. Minh further testified that the accepted practice among California pulmonologists was to have patients call their doctor if they required

9

the use of a nebulizer more than twice a day.  (AR 742.)  In Dr. Minh's view, such frequency of use by Plaintiff was caused by something other than asthma, such as a smoking, or a failure to take medication as prescribed.  (AR 743.)  Finally, Dr. Minh testified that Plaintiff's recorded respiratory rate was "just a little bit higher than normal people," a rate which would indicate that Plaintiff did not need to use a nebulizer more than twice a day.  (AR 744.)

Plaintiff has not challenged any of this testimony, except in general terms as discussed above.  The law allows an ALJ to rely on a lack of objective medical evidence to conclude that a claimant is not credible.  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (upholding ALJ's credibility determination in part because evaluations revealed little evidence of disabling abnormality of the claimant's spine).  Thus, this ground for finding Plaintiff's testimony not credible is upheld.

The ALJ also relied on treatment notes referenced by Dr. Minh that indicated that Plaintiff was not taking her medication as prescribed as a basis for discounting her subjective complaints.  (AR 559.)  A clinic progress note dated January 30, 2003, states that Plaintiff is "not taking Prednisone as prescribed."  (AR 463.)  A July 2003 admission record from Valley Plaza Doctors Hospital indicates that Plaintiff was out of Prednisone; the accompanying American Medical Response record indicates that Plaintiff "overdid" her inhaler, using it "numerous times," but that she did not use her home nebulizer.  (AR 459-60.)  Additionally, one note from Moreno Valley Community Hospital states that Plaintiff was "off Prednisone" for one month, (AR 485), and a second states that she was "non-compliant [with] meds."  (AR 723.)

1    The ALJ was entitled to rely on the fact that Plaintiff failed to
2 follow her doctor's orders and take her medications as prescribed to
3 conclude that her testimony that she was disabled as a result of her
4 asthma was not true. *See Fair*, 885 F.2d at 603 ("[A] claimant's
5 failure to assert" a good reason for failure to follow a prescribed
6 course of treatment "can cast doubt on the sincerity of the claimant's
7 pain testimony.")

8    Finally, the ALJ found that Plaintiff was being evasive with him
9 when he tried to pin her down at the hearing. (AR 559.)  This is an
10 ordinary technique used by factfinders in evaluating credibility and
11 can be used by the ALJ in evaluating a claimant's credibility. *See*
12 *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991) (holding ALJ
13 entitled to use ordinary techniques of credibility evaluation in
14 assessing claimant's credibility).

15    Plaintiff argues that the ALJ's contention that she was evasive
16 is unfair.  She claims that the reason she had so much trouble
17 answering the ALJ's questions was because he was aggressive in his
18 questioning of her and she was intimidated by him.  A review of the
19 transcript reveals that the ALJ was, at a minimum, direct with
20 Plaintiff. (AR 730-36.)  Plaintiff's contention that she was
21 intimidated by the ALJ and that that caused the confusion at the
22 hearing is a plausible explanation of what took place.  But that is
23 not the standard by which this Court judges the credibility finding.
24 *See Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (holding court
25 will not reverse ALJ's credibility finding based on contradictory or
26 ambiguous evidence).  The ALJ's findings are entitled to deference
27 where, as here, they are supported by the record.  *Bunnell*, 947 F.2d

at 346-47.  The ALJ found that Plaintiff was being evasive and, because that finding is supported by substantial evidence, it will be upheld.  *See Thomas*, 278 F.3d at 959.

Because the ALJ's finding that Plaintiff was not credible was based on specific, clear, and convincing reasons, all of which were supported by substantial evidence in the record, it is affirmed.

C.   The Vocational Expert's Testimony

Plaintiff's third claim is that the ALJ erred in relying on the "incredible" testimony of the vocational expert that "a number of different competitive assembly occupations would allow an employee to be off task and not performing their occupation a total of 4 hours out of a 40 hour work week," testimony which, in Plaintiff's view, "simply defies common sense."  (Joint Stip. at 14.)  This claim fails because the ALJ determined at step four that Plaintiff could perform her past relevant work (meaning, he did not need to rely on a vocational expert) and, regardless, rejected the vocational expert's testimony.

In his decision, the ALJ stated:

> I find then that [Plaintiff]'s past relevant work as an assembler was performed at various levels of exertion.  In comparing [Plaintiff]'s residual functional capacity with the physical and mental demands of this work, I find that [Plaintiff] is able to perform it as generally performed in the National economy.

(AR 560.)

Although the ALJ also noted the testimony of the vocational expert--given in response to a hypothetical question posed by Plaintiff's counsel--that Plaintiff could perform other similar occupations even assuming that she had to take "unscheduled fifteen to

12

twenty minute breaks three to four days per week, which would accommodate her alleged need to use a nebulizer during the workday," the ALJ explicitly disregarded this testimony:

> Since I have found [Plaintiff] has not established she needs to use a nebulizer or an inhaler during the workday in a manner that would interfere with light duty assembly work, I find the proposed limits without merit and not relevant to the ultimate finding in this case ....

(AR 560.)

Because the ALJ determined that Plaintiff could perform her past relevant work--a step-four determination that Plaintiff has not challenged in this action--the ALJ was not required to take testimony from a vocational expert. *See* 20 C.F.R. § 416.966(e); *see also Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (holding that ALJ did not err by failing to call vocational expert where ALJ determined at step four that claimant could perform past relevant work).  Thus, the vocational expert's testimony was not relevant.  Furthermore, to the extent that the ALJ relied on the testimony of the vocational expert, he was not obliged to accept limitations posed by Plaintiff's counsel in a hypothetical question that were not supported by substantial evidence in the record. *See Osenbrock*, 240 F.3d at 1164-65 ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").  As set forth above, the ALJ properly rejected Plaintiff's claimed limitations regarding her use of a nebulizer as unsupported by the objective evidence and because she was not credible.  Thus, the ALJ was not

required to accept the vocational expert's testimony as to those limitations and, indeed, expressly declined to do so.  For those reasons, this claim is without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the ALJ's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED:    March  6 , 2008.


_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\VASQUEZ, L 588\Memo_Opinion.wpd